The next case for argument is 15-1686, TecSec v. Adobe Systems Okay, I think we're ready Mr. Oaks, whenever you're ready. Thank you, may it please the court, Michael Oaks for the appellant TecSec, Inc. The district court sui sponte a grant of summary judgment of no infringement based on the selecting a label limitation in this case was both procedurally and substantively flawed, and resolving either one of those errors in TecSec's favor warrants reversal of the court's judgment. With respect to the procedural errors, despite the notice requirements of Rule 56 and this court's admonition that sui sponte grants of summary judgment are disfavored, the district court rejected the arguments that Adobe advanced in its pre-discovery motion for summary judgment of no infringement, and instead raised an issue for the first time at the hearing with no prior notice posed only as a question to the parties that it was considering having the parties brief. And so, I understand, but you appreciate, we've read the transcript, so at the end certainly the court observes that neither side feels the need to further brief this issue. That's true. You had an opportunity, did you not, before the district court, I mean in your brief you say Adobe had an opportunity and it didn't ask for briefing, well I don't see in the transcript where the opportunity presented to Adobe was any different or any more than the opportunity presented to you for additional briefing. That's true. Either party could have briefed the issue. Rule 56 states that if the court is considering a sui sponte grant of summary judgment, usually the proper procedure is to invite the motion from the party who would benefit from that. And here they invited the motion from Adobe. Adobe declined the opportunity to brief it. So at that time, there's no pending motion from Adobe. The court didn't indicate that it was moving on its own. We had been precluded from the discovery order from taking discovery on any issue that was not raised by Adobe in a brief. So we couldn't have taken discovery on the issue that the court was discussing anyway. Well, so why didn't you say that, you didn't tell that, say that to the district court? Because I understood Adobe to be declining the invitation to brief that issue. There's no pending motion at that point. The court just said that. Well, she clearly said neither side feels the need to further brief. That's correct. She didn't say since Adobe isn't going to brief further or bring a new motion. At that point, I believe there was nothing for our side to brief because the invitation to brief that issue by the moving party was declined. The court did not indicate that it was moving on its own merits. And so there was nothing for me to brief. There was no pending claim construction that the court had proposed at the hearing. That word pre-existing label never came up at the hearing. So I would have been briefing against myself, I suppose. There's really nothing pending as the non-movement for me to brief. There's just no pending motion. And there was a motion for a summary judgment of non-infringement. There was. And we had already briefed that. And we actually were successful. This was a new issue that the court raised. This was a new issue in conjunction with the hearing on that motion. On that motion, yes. An issue not briefed by Adobe, an issue that we were precluded from taking. This was an argument she felt was compelling that she didn't find in your brief. She actually freshly asked Adobe, you did not move on this ground, did you? And Adobe said, we did not move on this ground. And then she invited briefing. Yes. Obviously, she felt that was an issue that either was overlooked or wasn't fully appreciated by the parties. But she felt that it was important and asked for the briefing. Yes. And the moving party that would have benefited from that declined the invitation. So again, I don't, there was no pending motion. Under Rule 56, all benefits, all notice, all is supposed to be taken in the favor of the non-moving party. The moving party declined to brief that issue. So we deem that to be not an issue that was, that they deemed to be sufficient to be grounds for a grant of summary judgment. Again, we couldn't have taken discovery on that issue. There was no, the discovery was expressly denied. If you look at A56, if you look at the discovery order, it says expressly, we strike every one of TexEx discovery requests that are not explicitly necessary to respond to Adobe's motion. Can I ask, and I don't remember the transcript well enough. So this is what I'm remembering, and tell me if I'm wrong, that the district court raised this question with Adobe first. That's true. That's correct. And Adobe said- We've got our grounds. Not interested. Yes. So by the time you get up, the district court raises it again with you. Why at that point is it not clear that the district court is thinking about doing this sua sponte even without a motion from Adobe? So that your explanation this morning, the issue was over and done with once Adobe declined the offer. Right. It doesn't seem quite to square with the scenario that I'm remembering, perhaps- Yeah, I'm looking at A39, 37. The court looks, I was the one standing there, so I can say exactly what happened. She said, let me hear from TexEx briefly. So Adobe has already declined the invitation. And I said, I don't think the reason why Adobe is not arguing it is I don't think there's any reasonable argument to be made there. Oh, wait a minute. Can I get the clarification? Because I'm looking at 39, 34, and that's when Ms. Morrow is. Right. I think his question was when she finally turns to me. Yeah, but before she turns to you, I mean, Ms. Morrow had done a quick step. I think pretty much maybe embraced where the district court was going on this other issue and concludes by saying, I think, maybe I misunderstand the transcript. So if that were the case, would not that be sufficient to grant your judgment of non-infringement? And Ms. Morrow says, we believe it would, Your Honor. And then she says- And she says, but you didn't argue that. The court appeared, we have had a number of additional non-infringement arguments we didn't argue. Right. But, so you read that as being that was the end of the matter? Yes, that Adobe is declining the invitation once again to brief it. And then again, at the end of the hearing, declining the invitation to brief it. So again, Rule 56 says the court should invite the motion- What exactly did the district court say to you on this subject after Adobe had sat down and you're standing up? Right. What I was saying is, the court says, there's two parts here. So the first one is, all right, let me hear your quick response. This is 39, 35, starting at line 10. Again, this was not something explicitly raised. Let me hear your quick response. So I said, they didn't argue it. The reason they didn't argue it- This is a really bad argument, right? Okay. It's a terrible argument, right? And then again, she says the 39, 37, so you don't think there's any briefing needed? I don't. There's a reason why Adobe didn't argue this. And Adobe actually stated in their argument the construction that we agreed with. Adobe said, selecting a label is selecting the type of label that I want to apply or a particular label. And we agreed with that. So again, at that time, there was no dispute. They didn't say it's selecting a pre-existing label. They actually said a construction that we would have agreed with. The court went on its own and then picked a construction that nobody talked about at the hearing. This pre-existing label is incredibly wrong, but it was also never discussed at the hearing. So there's no notice that the court is contemplating construing some term that doesn't appear anywhere in the patent, the prosecution history, the specification, the claims. The word pre-existing doesn't appear anywhere. Can I just ask you a process question before your time runs out? Yes. Because there's just so much floating around in this case, it's hard to keep track. Assuming hypothetically we would agree with you, even on the merits. I think the merits are just as clear, yes. Then what are we left with in this case? You've had, there are still summary judgment motions by the other side that are pending that she has not yet ruled on, right? She decided to rule on this. She didn't rule on the others, right? There's only one motion pending. I understand. Right. But other issues pending. There are. It's a little complicated getting through her. Well, I understood. She raised a couple issues. She has a few more issues to respond to that she threw into her motion. Yeah, I know. But let me talk about the three alternatives that you have raised in, I'm sorry, that they have raised in red as an alternative basis to uphold the judgment. My understanding is that all of those three were bases upon which they filed the motion for summary judgment and that the judge has not yet ruled on those alternative bases. Am I right about that? So you're talking about, so there's one alternative basis about the label and the court did rule that a certificate security is the label. So encryption with certificate security is a label. So they lost on that one. The multi-level security argument, they also lost on that one. The court that found that we had demonstrated that the product does do two layers of encryption and does do multi-level security. So I think the court reserved on the object-oriented key manager issue. I don't believe that there was an express decision on that. So there's still matters pending. There are some matters still pending. There are still open matters pending. Correct. So the court decided, the court said later on at the hearing when they had moved for fees that we did not find Adobe's arguments overwhelming or persuasive. So I'm not sure that there's actually, and she may have just set those aside because she didn't want to decide them, but I think the court found Adobe's motion and what Adobe presented at the hearing to be not persuasive and that's why the court went out on its own and found another issue. She made that statement in connection with the attorney's fee. That's correct. Right. Which is a different stand. Adobe said, well, we were victorious. And she said, well, actually you weren't. I was basically. Okay. So with respect to where you stand now, you've got a few issues that are still open where they've moved for summary judgment and the court hasn't decided it. And then she's made reference as you point out in her opinion that she might be thinking about other things as well. That's correct. So she said, no one's raised this issue to me, but I think there are some one-on-one concerns with this patent. And then she said no one raised this labeling issue, but I would have found that this thing doesn't actually do labeling, even though she found that there's a label and she found that the label is inserted into the trailer. Can I ask you two very specific record things that confuse me a little bit? But one is just in terms of what you allege to be infringing, do you allege that the multilevel security feature is infringed when you have a single encrypted object plus a label or do you need an embedded object, a second object? So from the prior appeal, the court held that multilevel security requires two sets of encryption. So Acrobat has a feature called PDF envelope, so you need an encrypted PDF or an encrypted object inside something else that is not encrypted. And the other thing I just wanted to be clear about, you have not given up the allegation that Adobe is an indirect infringer. All you did was say that if the product Acrobat is not directly infringing, nobody can be a direct infringer. That's exactly right. So the representation by Adobe that we gave that up, we said, if we can't prove direct infringement, then by this court's first order, we can't show any direct infringement. I read it exactly the same way, I just wanted to be clear. So there's one other thing I want to point out. I don't know how much time I have, but one other thing about the selecting a label limitation that the court found on, it is only found in the method claims. There's no dispute about that. The system claims do not have that limitation, the word selecting a label. So again, it would be impossible to find summary judgment against all the claims on that. I think the court said that we waived that right because we said claim one was representative, which we said in the beginning of our brief just to demonstrate the technology. But throughout our summary judgment opposition, every time there was a distinction between system and method claims, we highlighted that in our brief to the court saying, this only applies to system claims, this only applies to method claims. And same thing for the display header, this only applies to the 755 patent. The word displaying only applies to the 452. So there was no waiver where we said every claim rises or falls on claim one, whether or not the limitation is found within that claim. So I want to be clear about that. Thank you. Thank you. Thank you, Your Honor. Charlene Morrow for Adobe Systems. The procedure that the district court followed was not an abuse of discretion. The district court ruling states that at oral argument, the court advised the parties that it viewed the claim term as potentially dispositive and indicated that she gave the parties opportunities to brief the issues that the parties declined. And that's in her order at A19. Yeah, but I mean, you've got to acknowledge there's a bit of confusion. I mean, I wasn't standing there, you two individuals were. But at the beginning, she says, the very first thing she says is, I don't think either side has really addressed or briefed this issue. So I want to raise it with you orally here in the court. And most likely, I'm going to send you back to the offices to brief it in detail. So when she starts off, she says what it is we're talking about. It sounds like she just wants to get a bit of clarification, and we'll see if we move on. But at A3934, which is two pages past the excerpt that the court is referring to, she asks us whether ruling on selecting would be sufficient to grant you, Adobe, a judgment of non-infringement. So she expressly opposed the question to counsel before I argued this issue and before counsel for tech sec argued this issue. She then goes on and asks me about why we didn't raise this, and I explain that. And then what I said was, we didn't necessarily argue that term. This is at A3935. We didn't separately argue that term. But obviously, if the court is amenable to hearing argument on that, and we certainly wouldn't object to tech sec being heard on that, and the court ruling on that ground rather than the other ground that we had raised, that the encryption dictionary is not a label. So at that point, we in no way declined the district court's suggestion that she hear argument on the term selecting and consider it as a potentially dispositive issue. We accepted that as a potential ground for a judgment for Adobe and said that we would not object to tech sec being heard on that and then the court ruling on that. So this was clearly a process where the court was following the usual sua sponte process of identifying an issue for counsel, seeking input from both parties on how that should be heard, and then proceeding with the hearing. What about your friend's argument with respect to discovery? Assuming we don't agree. I know you pointed to something in the record when you said this, but let's assume that we do not see this as having been raised. There's no prejudice to tech sec. In tech sec's brief, which we didn't cite in our pleadings, but this is at page A3467, in opposition to the summary judgment motion, tech sec lays out its theory on selecting a label. It says, by selecting the encrypt with password option, this selection also establishes the content for the label because the password security handler must retrieve certain information from the encryption dictionary, i.e., selecting a label for the object. So tech sec, in its opposition to Adobe's summary judgment motion, explained its position with regard to this entire claim limitation of selecting the label, not just what a label was. In addition, tech sec's expert similarly provided his opinion, that's at 3790, and tech sec expert said, under the proper construction, it is my opinion that Adobe Acrobat selects a label for a PDF object. So it's not the case that tech sec was faced with a situation where it had not thought through its infringement theory or where it had not been able to present evidence on it. I was thinking a little bit about that, and I was thinking in particular about the passage in the district court's opinion rejecting doctrine of equivalence, and I think the opinion says, it's right near the end or something, it says their expert just didn't do anything about that, so you can't do that. But how could you expect their expert to say, if there is a distinction between selecting from a pre-existing menu and creating, then the accused product is an equivalent of that when that theory had not been in the motion itself. And why isn't that prejudice? That is the absolute... And that was not our argument. We argued that specifically with regard to the other terms that had been briefed, where the expert didn't have the opportunity to do that. But at the argument... I'm sorry. I apologize. Yeah, thank you. You get to... Too excited. No, I didn't mean that. They get to make a doctrine of equivalence argument, including expert evidence that does it in sufficient detail to meet the standards of our precedence, but you can't fault them for not doing that if the particular issue has not been in the motion. And so when you said there's no prejudice, I don't really understand that. So with regard specifically to doctrine of equivalence, and also with regard to the argument that the apparatus claims were different, had counsel for TxEC thought that there were issues associated with that below, they had the opportunity to argue that, raise that with the court, ask for additional briefing. She told us we could have time to prepare before we did the hearing. So there was no reason for them to make the strategic decision that they did, that they should proceed on the record currently available. I'm sorry. Prepare before the hearing, at which she first asked. Yeah, when she first asked, she asked us... I'm sorry. I speak slowly. Can you just wait for me to finish? Thank you. I apologize. How did they have an opportunity to prepare before the hearing for something that was never raised until the hearing? At the beginning of the hearing, she asked the parties, and this is at A3933, she identified the issue and asked the parties, are you comfortable addressing that right now, or do you want time to go back and think about that? And so she was giving us the option at the hearing itself... I'm sorry. You said prepare before the hearing. No, Your Honor, I apologize if I misspoke. I said she gave us the opportunity at the hearing to take a break and come back, or obviously at that point to ask for another opportunity to be heard on this issue. She said, and this is at A934-33, are you comfortable addressing that right now, or do you want time to go back and think about it? And so we had the opportunity to ask her, both sides had the opportunity to ask her to not take up hearing on the issue at all at that time. I'm sorry. I'm looking at the transcript, and I'm not seeing what you're seeing, because when the district court raises that and says, are you comfortable addressing that right now, or do you want to go back and think about that, it seems to me she's just talking to you, because you're the only one that responds to her question. By the time we get to Mr. Oaks, you've done your thing and responded, and the court says, all right, let me hear Mr. Oaks. So it doesn't seem to me... I wasn't there, but all I see in the transcript is she seems to be directing that question to you, and you're the only one that ever responds to that question, right? But counsel for TxECEC at any of the three opportunities where they were given the opportunity to say they wanted to brief this could also have said, we want to brief this, and we'd like additional oral argument, or we'd like to set another oral argument. So is this your answer? Or we'd like to submit an expert declaration on doctrine of equivalence, or we'd like to separately address the apparatus claims. Is there anything she asked about that had anything to do with the doctrine of equivalence? Any suggestion that she was thinking or... We know she had to read this question about selecting a label on how it's the construction. Is there any notion about doctrine of equivalence? She did say, enter judgment for Adobe, which would logically be dispositive of... I thought there was a paragraph right at the end of her opinion where she says, she addresses doctrine of equivalence and says, you really need some detail, and there's no detail. And so in the record to address Judge Proust's question first, in the record it says, would that not be sufficient to grant you judgment of non-infringement, and that's at A3934. And so she was asking me the question of whether that would be sufficient to grant you judgment of non-infringement. That's to you. She didn't ask the kind of reverse flip question to Mr. Oates. And then, and her response to that is to your saying, we believe it would. She acknowledges, but you didn't argue that, did you? I did not argue doctrine of equivalence. And I apologize, Judge Tronto, I believe I may have lost track of a question that you had posed. No, no. To the extent there's any doubt about whether the district court addressed the doctrine of equivalence in the court's opinion, it's at A40 to 41. And it basically says, you need to have detail, you don't have detail. And I guess, I'm not sure how they could possibly have had detail on an issue that you didn't present to them in the motion. And I think the only, the issue there is the scope of the waiver by counsel in electing not to ask for additional time to argue this, and in declining briefing three times. And we would submit that by not separately arguing the apparatus claims, by not raising doctrinal equivalence, by not asking for additional time or additional briefing, that those arguments were waived. And specifically, with regard to the apparatus claims analysis, I did want to point out that in the TxEK infringement contentions, TxEK itself took the position that the apparatus claims, which require this object labeling subsystem, that those claims are met by Adobe Acrobat, quote, selecting an object. And this is in the record at A2208. And so it was TxEK itself that originally had the theory that the apparatus claims that object labeling subsystem are met by a device that, quote, selects a label. When it charted, it says the accused product has an object labeling subsystem. For example, Adobe Acrobat products select a label for an object. And so based on that, it was our understanding, and it was not surprising to us, that they didn't separately argue that the apparatus claims were not being impacted by the district court's construction of selecting a label. Can I, before your time runs out, can I ask you the same question I asked your friend, which is where this case stands? So do you agree with what he said? Or let me repeat my understanding, which is if we were to disagree with your position on this question, there remain before the district court portions of the summary judgment motion with respect to other terms, which he has not ruled on yet. Yes, that's correct. We raised two or three alternative arguments that the court has not yet addressed. With regard to the construction of selecting, the district court construction was simply the plain meaning of construction. We've cited a number of dictionaries to the court that indicate that the plain meaning of selection is to pick from a number of or a group of objects. Let me ask you about that. It does seem to me that it depends on the context. One context in which that feels more wrong than right is the context of selecting a name. When you say, select a name for your pet, you're not given a menu. That's what we're talking about here. We're talking about selecting in the context of dubbing. I don't understand why in the common sense world, the common sense meaning in that context, one needs a set of pre-existing choices that you're having to choose among. I think when we're going through the book of baby names, you pick from a number of existing names and that would be selecting a name. You can. Or you may decide to create a new name. You may decide to create a new name. When Prince was thinking of what he was going to call himself, I don't know that he had a book of glyphs, but I'm assuming not. I would argue that he created his name, or one of them, or both of them, and he did not of selecting is picking from a group of existing objects as opposed to creating something anew. The tech sec claim construction just doesn't make any sense in the sense of it being selecting because what they say is selecting is not a plain English meaning of anything. It is starting a process that generates some data that gets read into a file that they then call the label. There is no plain meaning of the word selecting that gets you to starting some long process. In addition, tech sec's construction is inconsistent with what it advanced to the district court in the protegrity case as being the proper construction of selecting for this particular portfolio. This is quoted in our brief at 28, but there their expert opined, the term selecting means to one of ordinary skill in the art in 1993, the act of choosing, typically in computer software by highlighting a block of data, pointing out or clicking a selection, or providing identifying information for one of a set of choices. A couple of years ago, tech sec agreed that in connection with this particular portfolio and given the technology at issue, selecting meant picking from a group of choices on a menu. They also provided a dictionary from the Microsoft Computer Dictionary that says, and this is also quoted in our brief, select in general computer use is to specify an item displayed on a screen by highlighting or otherwise marketing it with the intent of manipulating information in some way. This is a term that, as you note, has a plain English meaning. It's also a term that has a technical meaning in connection with picking one of the objects that's displayed on the screen. It may be a label, a menu item, it may be picking some text, but it's picking for something that's displayed on the screen. The only evidence that tech sec supports to show a different kind of meaning is an Adobe help document, not about the infringing products. What tech sec doesn't mention is in that document, 12 of the 13 times they use select, it refers to just that, picking menu items or picking some information on the screen. There is one possibly confusing sentence that refers to both selecting a file and entering data for the file name that they refer to as being evidence that Adobe uses selecting in a different fashion, but that's not enough to support a claim construction. Thank you. I would like to spend a little bit of time on this selecting versus ... The district court thought the distinction was between selecting and creating, and I don't view that to be the argument, and we rejected that distinction at the oral argument. Select means choose, that is the plain and ordinary meaning of it. The dictionaries that are cited here all cite to it as choose. Sometimes even the dictionary that Adobe cites, it says usually from among other options, but it's not an express requirement. That is not a limitation that is read into this claim from some dictionary that they found. Again, pick means ... Select means pick or choose. Just like with a name, a baby name, I can select any name that I want. If I'm starting a company and I want to select a name for my company, I'd probably be better served picking a name that no one else has had before. I can select whatever name I want, and that is exactly how this file label is supposed to work. I'm sending out an encrypted object, and I'm going to select all the permissions that will go into that. I don't have to know before I made the object who I'm going to send it to, what permissions they might have. I have the object. I encrypt it. I decide who is going to get that, and then the software creates that label based on the selections that I've made. That's exactly how the software works. That's exactly how the patent specifies it's supposed to work. In column two of the patent, it talks about selecting label conditions. Again, we're talking about the things that will go into the label. I've selected the label, and with the Acrobat product, you can only select two different types of labels. There's encrypt with password, and there's an encrypt with certificate. I have to make that selection at the outset. Then I'm going to select the encryption algorithm, and I'm going to select what permissions the people have, and then the Acrobat will write that label into the trailer. That becomes the label, and the court already found that that is the label. There's no label when it's not encrypted, and then when the document is encrypted, there's a label on it. So somebody selected that, and me as the user, I have to make those picks. I have to make those selections so that label will get created by Acrobat as an act of infringement. Somebody has to make the choices, and the user is the one who makes those choices, and that's what creates a label. Adobe's documentation, exactly the same thing. If I want to select a file name for a PDF, I come up with whatever I want to. I select the file name, and that becomes the name for the PDF. Other courts have come to the same conclusion. We cited that ClinTech nutrition case. To select is just to choose. It doesn't mean anything more than that. You don't have to have a static list of choices. The whole point of this patent is to be flexible and on the fly, so I don't have just one drop down of people that I might be able to send a document to. I can pick them as I go. That's my selection. Again, the examples that the court used to get to this preexisting only came from a different part of the specification where it's talking about selecting an object, and even then, those were just embodiments talking about a different claim term altogether. Again, select means choose. I think I've just gone over my time. Anything else? No. Thank you. Thank you both sides.